UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

United States of America,

Plaintiff,

vs.                                        REPORT AND RECOMMENDATION

Frank Mitchell Gurno,

Defendant.               Crim.  07-296 (JNE/RLE)

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

I.  Introduction

This matter came before the undersigned United States Magistrate Judge pursuant to a general assignment, made in accordance with the provisions of Title 28 U.S.C. §636(b)(1)(B), upon the Motion of the Defendant to Suppress Statements, Admissions and Answers.  A Hearing on the Motion was conducted on September 17, 2007,[1] at which time, the Defendant appeared personally, and by Manvir K. Atwal,

---

[1]At the close of the Hearing, the parties requested leave to submit post-Hearing memoranda on the legal issues raised by the Defendant's Motion.  Leave was granted, and the last submission on the issues was received on September 25, 2007, at which time, the Motion was taken under advisement.  See, Title 18 U.S.C. §3161(h)(1)(F) and (J); Henderson v. United States, 476 U.S. 321, 330-32 (1986); United States v. Blankenship, 67 F.3d 673, 676-77 (8th Cir. 1995).

Assistant Federal Defender, and the Government appeared by William J. Otteson, Assistant United States Attorney.

For reasons which follow, we recommend that the Defendant's Motion to Suppress Statements, Admissions, and Answers, be denied.

## II.  Factual and Procedural Background

The Defendant is charged with one (1) Count of involuntary manslaughter, in violation of Title 18 U.S.C. §§1112, 1151, and 1153(a).  The events which gave rise to those charges are alleged to have taken place on or about June 2, 2007, in this State and District.

At the Hearing, the Government presented the testimony of Timothy Ball ("Ball"), who is a Special Agent with the Federal Bureau of Investigation ("FBI").  As pertinent to the charge against the Defendant, and to the Motion now before us, the operative facts may be briefly summarized.[2]

---

[2]Rule 12(d), Federal Rules of Criminal Procedure, provides that "[w]hen factual issues are involved in deciding a motion, the court must state its essential findings on the record."  See, United States v. Santiago, 410 F.3d 193, 198 (5th Cir. 2005), cert. denied, 126 S.Ct. 1565 (2006).  As augmented by our recitation of factual findings in our "Discussion," the essential factual findings, that are required by the Recommendations we make, are contained in this segment of our Opinion.  Of course, these factual findings are preliminary in nature, are confined solely to the Motions before the Court, and are subject to such future modification as the subsequent
(continued...)

At the Hearing, Ball testified that, on June 2, 2007, he and his partner, Brian Peterson ("Peterson"), who is a Criminal Investigator, were called to the scene of a reported hit and run vehicular accident on Highway 1, between Red Lake, and Redby, Minnesota. At the scene, Sergeant Bill Branchaud ("Branchaud"), who is an officer with the Red Lake Police Department, told Ball and Peterson that there were several witnesses to the accident, including the Defendant. Although Ball did not interview any witnesses at the scene, Branchaud supplied him with the names, and contact information, for the witnesses to the accident. Ball testified that he was not sure if the Defendant gave a statement to any other law enforcement officer, while at the scene.

Later in the day on June 2, 2007, Ball made telephonic contact with the Defendant's mother, and asked her if the Defendant would be willing to come to the Red Lake Juvenile Detention Center ("JDC") in order to give a statement regarding the accident. Subsequently, the Defendant voluntarily appeared at the JDC accompanied by his girlfriend, Jennifer Mendoza. The interview of the Defendant lasted approximately one (1) hour, and he was not detained after that interview. Ball testified

---

[2](...continued)
development of the facts and law may require. See, United States v. Moore, 936 F.2d 287, 288-89 (6th Cir. 1991); United States v. Prieto-Villa, 910 F.2d 601, 610 (9th Cir. 1990).

that, during the interview, he and Peterson were in plain clothes, that, he did not smell alcohol on the Defendant's breath, and that the interview occurred approximately four (4) hours after the accident.

After their initial interview of the Defendant, Ball and Peterson interviewed two (2) other witnesses to the accident -- Richard Sumner, and Alberta Bernais – both of whom told the officers that the Defendant had been the driver of the vehicle at the time of the accident.   Those statements contradicted the statement provided by the Defendant on June 2, 2007, in which he stated that he had been the front passenger in the vehicle.   As a result of this discrepancy, Ball and Peterson determined that the Defendant was a suspect in the case and, on June 7, 2007, Asher L. Silkey, who is also a Special Agent with the FBI, telephoned the Defendant at the house of the Defendant's father, where the Defendant was staying, to ask him if he was willing to answer further questions.   The Defendant voluntarily appeared at the Red Lake Family and Children Services Building ("FCSB"), which is not a law enforcement building, and was accompanied by his father.

Ball and Peterson met the Defendant in the FCSB parking lot, and asked the Defendant's father to remain outside the conference room, while they spoke with the Defendant.   At the interview, Ball and Peterson were in plain clothes, and identified

- 4 -

themselves as law enforcement officials.  Ball testified that, at the outset of the interview, the Defendant was not advised of his <u>Miranda</u> rights, see, <u>Miranda v. Arizona</u>, 384 U.S. 436 (1966), and that he informed the Defendant that he and Peterson wished to ask him some follow-up questions, but that he did not have to speak with them, and could leave at any time.  Approximately ten (10) minutes after the interview began, the Defendant confessed to being the driver of the vehicle, and was placed under arrest at the conclusion of the interview, which lasted approximately thirty (30) minutes.

### III.  <u>Discussion</u>

<u>The Defendant's Motion to Suppress Statements, Admissions and Answers</u>.

1.     <u>Standard of Review</u>.  Government agents are not required to administer Miranda warnings to everyone they question.  See, <u>Oregon v. Mathiason</u>, 429 U.S. 492, 495 (1977).  Rather, <u>Miranda</u> warnings are required for official interrogations where a person has been "'taken into custody or otherwise deprived of his freedom of action in any significant way.'"  <u>Stansbury v. California</u>, 511 U.S. 318, 322 (1994), quoting <u>Miranda v. Arizona</u>, supra at 444; <u>Berkemer v. McCarty</u>, supra at 428-29; <u>United States v. Helmel</u>, 769 F.2d 1306, 1320 (8th Cir. 1985).

"In determining whether an individual was in custody, a court must examine all of the circumstances surrounding the interrogation, but 'the ultimate inquiry is simply whether there [was] a formal arrest or restraint on freedom of movement of the degree associated with a formal arrest." Stansbury v. California, supra at 322, quoting California v. Beheler, 463 U.S. 1121, 1125 (1983).  A list of common indicia of custody, that has been identified by our Court of Appeals, includes the following:

> (1) whether the suspect was informed at the time of questioning that the questioning was voluntary, that the suspect was free to leave or request the officers to do so, or that the suspect was not considered under arrest; (2) whether the suspect possessed unrestrained freedom of movement during questioning; (3) whether the suspect initiated contact with authorities or voluntarily acquiesced to official requests to respond to questions; (4) whether strong arm tactics or deceptive stratagems were employed during questioning; (5) whether the atmosphere of the questioning was police dominated; or (6) whether the suspect was placed under arrest at the termination of the questioning.

United States v. Griffin, 922 F.2d 1343, 1349 (8th Cir 1990); see United States v. Czichray, 378 F.3d 822, 827 (8th Cir. 2004), cert. denied, 544 U.S. 1060 (2005); United States v. Axsom, 289 F.3d 496, 500, 501 (8th Cir. 2002).

However, these factors "are by no means exhaustive and should not be applied ritualistically, counting indicia which contribute to custody against those which detract." United States v. Brave Heart, 397 F.3d 1035, 1039 (8th Cir. 2005), citing United States v. Czichray, supra at 827.  Instead, the Griffin factors serve as a guide

- 6 -

in the resolution of the ultimate inquiry of "whether the defendant was restrained as though he were under formal arrest."  See, <u>United States v. Czichray</u>, supra at 827.

Whether or not <u>Miranda</u> is implicated, the Supreme Court has recognized that, in order for a confession to be admitted into evidence, it must be voluntary if it is to satisfy the Fifth Amendment's right against self-incrimination.  See, <u>Dickerson v. United States</u>, 530 U.S. 428, 433-34 (2000).  For a confession to be considered voluntary, a Court must examine "'whether a defendant's will was overborne' by the circumstances surrounding the giving of a confession."  <u>Dickerson v. United States</u>, supra at 434, citing <u>Schneckloth v. Bustamonte</u>, 412 U.S. 218, 226 (1973).

As the Supreme Court has recently explained:

> The due process test takes into consideration "the totality of all the surrounding circumstances -- both the characteristics of the accused and the details of the interrogation." [Schneckloth v. Bustamonte, 412 U.S. at 226.]  See also Haynes [v. Washington, 373 U.S. 503, 513] (1963); Gallegos v. Colorado, [370 U.S. 49, 55] (1962); Reck v. Pate, [367 U.S. 433, 440] (1961)("[A]ll the circumstances attendant upon the confession must be taken into account"); Malinski v. New York, [324 U.S. 401, 404] (1945) ("If all the attendant circumstances indicate that the confession was coerced or compelled, it may not be used to convict a defendant").  The determination "depend[s] upon a weighing of the circumstances of pressure against the power of resistance of the person confessing." Stein v. New York, [346 U.S. 156, 185] (1953).

Id. at 434.

Among the circumstances, which are to be considered in this analysis are, first and foremost, whether a Miranda warning has been given, see, Withrow v. Williams, 507 U.S. 680, 693 (1993); any elements of "police coercion," see, Colorado v. Connelly, 479 U.S. 157, 167 (1986); the length of the interrogation, see, Ashcraft v. Tennessee, 322 U.S. 143, 153-154 (1944); the location of the interrogation, see, Reck v. Pate, 367 U.S. 433, 441 (1961); and the continuous nature of the interrogation, see, Leyra v. Denno, 347 U.S. 556, 561 (1954).  See also, Withrow v. Williams, supra at 693 (listing the applicable considerations).

    2.    Legal Analysis.  The Defendant has moved to suppress the statements that he made during his initial interview on June 2, 2007, as well as during his subsequent interview on June 7, 2007.  We address the circumstances of each of the Defendant's interviews, in turn.   As to both statements, the Government concedes that police officers initiated the questioning, and that the Defendant was never provided with a Miranda advisory, and therefore, the pertinent inquiry is whether the Defendant was in custody, so as to require a Miranda advisory, and, if not, whether his statements were otherwise involuntary. We find that he was not in custody during either interview, and additionally, that his statements were voluntary.

      a.    <u>The Interview of June 2, 2007</u>.  The Defendant first challenges the admissibility of the statements that he made during his interview with Ball and Peterson on June 2, 2007.  Ball testified that as he was unable to interview the Defendant, as a witness, at the scene of the accident, that he subsequently made contact with the Defendant, at the house of the Defendant's mother, and asked him if he would be willing to come to the JDC to give a statement, and that the Defendant arrived at the JDC, in the company of his girlfriend, a short time later.  As a consequence, while the officers had initiated the contact, the Defendant appeared at the JDC voluntarily, and Ball gave unrebutted testimony that the Defendant was not a suspect during that interview.  Moreover, there is nothing in the Record to suggest that the Defendant's freedom of movement was restrained in any way, and there is nothing to so much as intimate that the officers employed any deceptive stratagems, strong arm tactics, or even raised their voices, at any time during the meeting.

     The interview was conducted in less than an hour, and the Defendant was not arrested at the end of that interview.  See, <u>United States v. LeBrun</u>, 363 F.3d 715, 722 (8th Cir. 2004)(the lack of arrest is a "very important factor weighing against custody."), citing <u>United States v. Galceran</u>, 301 F.3d 927, 931 (8th Cir. 2002).  While the officers did not inform the Defendant of his right to terminate the interview, there

is no indication that he was inclined to be anything other than cooperative, and he provides no showing that he was intimidated, by any acts or statements of the officers, to participate in their questioning.  In addition, he never asked the officers to cease their questioning, to leave the JDC prior to the end of the interview, or to refrain from asking any particular line of questions.

As we have noted, the interview took place at a juvenile detention center, but "<u>Miranda</u> warnings need not be imposed simply because the questioning takes place in a police station." <u>United States v. Galceran</u>, supra at 931, citing <u>Oregon v. Mathiason</u>, 429 U.S. 492, 495 (1977); see also, <u>California v. Beheler</u>, 463 U.S. 1121, 1125 (1983)(defendant not in custody when the police initiated contact and he voluntarily accompanied them to the police station for questioning and confessed in the course of an interview that lasted approximately half an hour); <u>United States v. Brave Heart</u>, supra at 1039 (defendant not in custody despite accusatory questioning by law enforcement officers at police station when his presence was voluntary and he was treated calmly and respectfully).

Here, the Defendant had no reason to submit to the questioning of the officers, apart from his interest, for whatever reason, to cooperate in their investigation and, after the questioning ceased, he left interview free to proceed wherever he chose.

Moreover, there is no evidence to demonstrate that the Defendant was impaired in his mental capacity to appropriately respond to the questions then put to him.  As a result, we find that mere fact that the initial interview took place at a juvenile detention center does not weigh heavily toward a finding that the Defendant was in custody and, after carefully considering the <u>Griffin</u> factors, we find that the Defendant was not in custody, during the interview with law enforcement on June 2, 2007.

      b.    <u>The Interview of June 7, 2007</u>.  The Defendant also seeks to suppress the statements he made during the interview on June 7, 2007, with Ball and Peterson at the FSC.  With the exception of being arrested at the close of the pre-arrest interview, none of the <u>Griffin</u> factors weigh in favor of a finding of custody.  While the Defendant was a suspect,[3] at the time of that interview, we note that according to Ball's uncontested testimony, the Defendant was told at the beginning of the interview

_____

[3]Since early on, the Courts have concluded that "[i]t is insufficient to render an interrogation custodial that the purpose of the interrogation is to obtain potentially inculpatory information from a suspect that has become the focus of the investigation."  <u>United States v. Griffin</u>, 922 F.2d 1343, 1348 (8th Cir. 1990), citing <u>Beckwith v. United States</u>, 425 U.S. 341, 345 (1976), and <u>United States v. Jones</u>, 630 F.2d 613, 615 (8th Cir. 1980); <u>United States v. Wallraff</u>, 705 F.2d 980, 991 (8th Cir. 1983)("Similarly, the fact that the investigation has proceeded to a point in time at which it might be said to have focused on the defendant is insufficient to render an interrogation custodial," "and 'does not weigh heavily in that analysis.'"), citing, and quoting, <u>United States v. Jimenez</u>, 602 F.2d 139, 145 (7th Cir. 1979).

that he did not have to speak to the officers, and that he was free to leave at any time. As noted by our Court of Appeals, "[w]hile advising someone that he or she is not under arrest helps to mitigate an interview's custodial nature, an explicit assertion that the person may end the encounter is stronger medicine," and "[s]uch a statement provides an individual with a clear understanding of his or her rights and generally removes any custodial trappings from the questioning." See, United States v. Ollie, 442 F.3d 1135, 1138 (8th Cir. 2006), citing United States v. Czichray, supra at 826.

Moreover, the interview took place in a conference room at a public place, which was not within a law enforcement building, and which tends to show that the atmosphere of the interview was not police-dominated. See, United States v. Martin, 369 F.3d 1046, 1057 (8th Cir. 2004), cert. denied sub nom. Biernat v. United States, 543 U.S. 1035 (2004)(finding that interview was not custodial when it took place at a public restaurant, and the defendant's freedom was "unrestrained beyond the ordinary confines of being seated at a table in a public cafeteria."). As in the previous interview, at no point was the Defendant handcuffed, or physically restricted, and he has not argued that the police used any strong arm tactics, or deceptive strategies, during that interview. Finally, the interview lasted only thirty (30) minutes. Accordingly, the

mitigating factors all warrant a finding that the Defendant was not in custody, prior to his actual arrest.

As to the aggravating factors, the Defendant was arrested at the close of the interview. However, there is no evidence that Ball or Peterson employed any deceptive stratagems, or strong arm tactics, throughout the interview. As was noted previously, the interview took place in a conference room in a public building, where interviews are less likely to be found custodial. See, <u>United States v. Martin</u>, supra at 1057. Furthermore, the atmosphere of the interview was not police-dominated, as only two (2) agents interviewed the Defendant, and they were both in plain clothes with their weapons concealed. Accordingly, we find that a reasonable person, under the circumstances confronting the Defendant, would not have believed that he was in custody until such time as he was placed under arrest, and that a <u>Miranda</u> advisory was not necessary under those circumstances.

Even in the absence of a custodial interrogation, we must also determine, consistent with the requisites of the Fifth Amendment, whether the statements given by the Defendant were voluntary, or whether they were the product of an overborne will. On the Record presented, we find no evidence to reflect that the Defendant's statements were involuntary, with any specific, and evidence-based, instances of

- 13 -

coercion.  On this Record, the Defendant's interviews were plainly the product of his self-chosen decision to cooperate with law enforcement.  The length of the interviews was not unduly burdensome, the Defendant was not denied any of the normal accommodations of daily living, and he was not duped into lending his cooperation in an investigation he was otherwise resisting.

Moreover, the Defendant does not suggest, let alone support, the existence of any physical, or mental impairments, which would impact upon the voluntariness analysis, nor urge any age-related naivety, which would reflect a less than voluntary choice, on his part, to answer law enforcement's questions.  As we have previously noted, Ball specifically testified that he did not smell alcohol on the Defendant's breath at the time of the interview on June 2, 2007, which took place about four (4) hours after the vehicular accident was reported, and the Defendant has offered no evidence that he was intoxicated at that interview, nor is there any evidence to show that the Defendant was impaired, however slightly, at the second interview on June 7, 2007.

Accordingly, viewing the evidence in totality, we find that the Defendant's will was not over-borne, and we conclude that the statements which he made during the interviews of June 2, 2007, and June 7, 2007, were voluntary, and therefore, his Motion to Suppress those statements should be denied.

- 14 -

NOW, THEREFORE, It is –

RECOMMENDED:

That the Defendant's Motion to Suppress Statements, Admissions and Answers [Docket No. 15] be denied.


Dated:  October 5, 2007                              s/Raymond L. Erickson
                                                     Raymond L. Erickson
                                                     CHIEF U.S. MAGISTRATE JUDGE

**NOTICE**

Pursuant to Rule 45(a), Federal Rules of Criminal Procedure, D. Minn. LR1.1(f), and D. Minn. LR72.2(b), any party may object to this Report and Recommendation by filing with the Clerk of Court, and by serving upon all parties **by no later than October 22, 2007**, a writing which specifically identifies those portions of the Report to which objections are made and the bases of those objections.  Failure to comply with this procedure shall operate as a forfeiture of the objecting party's right to seek review in the Court of Appeals.

If the consideration of the objections requires a review of a transcript of a Hearing, then the party making the objections shall timely order and file a complete transcript of that Hearing **by no later than October 22, 2007**, unless all interested

parties stipulate that the District Court is not required by Title 28 U.S.C. §636 to review the transcript in order to resolve all of the objections made.